# RONALD SULLIVAN LAW, PLLC

## Ronald S. Sullivan Jr.

September 28, 2021

<u>VIA OVERNIGHT DELIVERY</u>

Mr. Ken Hyle
Assistant Director
Office of General Counsel
Federal Bureau of Prisons
320 First Street, N.W.
Washington, D.C. 20534

                                                Re:    Clare Bronfman
                                                                 Reg. No. 91010-053
                                                                  <u>Appeal No. 1073720-R2</u>

Dear Mr. Hyle:

      This firm represents Clare Bronfman, inmate Reg. No. 91010-053, currently serving in the FDC Philadelphia. Ms. Bronfman has filed a Central Office appeal after receiving denials from her unit team, warden and regional director with respect to the application of a Public Safety Factor ("PSF") to her security level classification. We are writing to you, additionally, because it is evident that the complexity of Ms. Bronfman's case and the legal issues associated with a multi-codefendant case has unfortunately resulted in certain salient facts being misunderstood by staff. Given the page limitation of the formal appeal, we respectfully ask you to review this letter, wherein we attempt to clarify demonstrable and provable misunderstandings of the facts of Ms. Bronfman's case.

      Both at the Warden level and Regional level, the principal justification for applying a Public Safety Factor to Ms. Bronfman is that she "recruited" three Mexican siblings (one of them a minor) into the country for the purposes of having sex with her co-defendant, Keith Raniere. As set forth more fully below, this claim – simply put – is just factually wrong. Ms. Bronfman was a professional show horse jumper living in Europe and Florida, and not even a member of NXIVM, when the three sisters were recruited. Further, she knew nothing about a sexual relationship with Keith Raniere and any of the sisters until many years later, when each was an adult.

      The other major factual misunderstanding is that it appears that decision makers have conflated Ms. Bronfman's immigration conviction with the claim that she "recruited" Mexican girls in the country to have a sexual relationship with Keith Raniere. To the contrary, Ms. Bronfman's immigration conviction arose out of conduct in 2016, when one of the sisters – then in her late twenties – was attempting to get *back* into the country to care for a dear friend dying of cancer. Ms. Bronfman's aide was illegal, to be sure, and she entered a plea because of it, but it had nothing – absolutely nothing – to do with "recruiting" young women into the country.

(202) 935-4347
rsullivan@ronaldsullivanlaw.com

1300 I Street NW
Suite 400 E
Washington, DC 20005

General Counsel, Federal Bureau of Prisons
September 28, 2021
Page 2

Clearly some of Ms. Bronfman's co-defendants, who were members of NXIVM long before Ms. Bronfman joined, recruited Mexican nationals to the United States, but Ms. Bronfman was not one of them. Clearly, some of Ms. Bronfman's co-defendants facilitated sexual relationships with Keith Raniere, but Ms. Bronfman had no knowledge of that. Furthermore, the federal judge who presided over Ms. Raniere's trial and the U.S. Attorney's office, reached the same conclusion: Ms. Bronfman had no knowledge of the sex-related activities of the sub-group called DOS. Indeed, Mr. Raniere forebade anyone from telling Ms. Bronfman about the secret group.

Below we provide a more fulsome analysis. As you can see, Ms. Bronfman has taken all administrative steps required for her to challenge the PSF of "greatest severity offense" that has been applied to her security level classification. I attach the relevant documents and write with respect to the appeal being made to your office from the August 16, 2021 decision of the Regional Director, which rejected Ms. Bronfman's appeal and concluded that "the Warden adequately addressed your complaint. ... Specifically, you participated in efforts to recruit and secure immigration status for non-citizens, some of whom were minors, so they could become sexual partners for a co-defendant."

The substantive bases for the appeal are set forth in the accompanying Regional Administrative Appeal. I write to you to emphasize that the Regional Director ("RD") reached an incorrect factual conclusion concerning what Ms. Bronfman did without citing or referring to any evidence that she did anything to assist in the sexual misconduct of her co-defendant, Keith Raniere, or to wrongfully secure immigration status for any non-citizens for the purposes of Mr. Raniere to sexually abuse them. The RD's conclusion is contrary to the actual trial testimony of Mr. Raniere's victims and others and to what the sentencing judge concluded. Indeed, we know of no evidence that supports the conclusions reached by the Unit Manager (March 12, 2021), the Warden (Apr. 1, 2021), or the Regional Director.

Judge Nicholas G. Garaufis — who presided over the trial of Mr. Raniere and heard the trial testimony — specifically noted that Ms. Bronfman had no knowledge of any alleged "sex cult," otherwise known as "DOS." There is nothing at all in the record to suggest that the Court would infer that Ms. Bronfman should be labeled a sex offender, and this is consistent with his recommendation concerning the terms of Ms. Bronfman's incarceration, recommending the minimum security camp at FCI Danbury. (Judgment, at 2, Oct. 7, 2020 (ECF No. 946). As Judge Garaufis noted at Ms. Bronfman's sentencing:

> Following a six-week jury trial over which I presided, Raniere was convicted of racketeering, racketeering conspiracy, wire fraud conspiracy, forced labor conspiracy, sex trafficking conspiracy, and two counts of sex trafficking. <u>To be crystal clear, Ms. Bronfman was not convicted of any of those crimes</u>. Ms. Bronfman was not convicted of participating in any racketeering activity. And there are many aspects of Raniere's crimes with which Ms. Bronfman very well may not have been familiar. Ms. Bronfman vigorously disputes the proposition that she was aware of either DOS or any sex trafficking that Raniere engaged in, and she vigorously disputes the proposition that

General Counsel, Federal Bureau of Prisons
September 28, 2021
Page 3

>she knowingly funded DOS or sex trafficking activity. <u>I agree with Ms. Bronfman that the available evidence does not establish that she was aware of DOS prior to June 2017 or that she directly or knowingly funded DOS or other sex trafficking activities</u>.

J. Garaufis Sentencing Memo at 6-7 (emphasis added). Furthermore, Judge Garaufis noted: "I do not find that Ms. Bronfman knowingly funded a sex cult." Id. at 16.

That conclusion, of course, follows directly from testimony at Mr. Raniere's trial, including prominent, senior DOS member Lauren Salzman, who testified that Ms. Bronfman's "name was raised a bunch" as a potential DOS recruit but that Mr. Raniere specifically rejected it again and again. Ms. Salzman also testified that she and others deliberately concealed DOS from Ms. Bronfman, including by lying to the professionals that Ms. Bronfman hired professionals to investigate the allegations against DOS when they became public. Judge Garaufis unambiguously made a finding that Ms. Bronfman did not fund nor was she involved in any of the sex trafficking activities attributed to the co-defendants in her case.

That judicial finding applies equally to Jane Does 2, 3, and 4 (all sisters from Mexico), whose entering and remaining in the United States Ms. Bronfman had nothing to do with. This denial, as well as the Warden's denial before it, are evidently based on a demonstrably false claim that she participated in efforts to "recruit" non-citizens into the country, including a "minor," to become sexual partners with her co-defendant. This claim is based on a summative statement in the PSR that continues to be misread, is inconsistent with the trial testimony at Mr. Raniere's trial, and which the presiding judge found to be not accurate.

- <u>Jane Doe 2</u> – The trial transcript shows very clearly that Ms. Bronfman did not recruit Jane Doe 2 into the country, and she had no knowledge of any sexual relationship with Jane Doe 2 and her co-defendant when she was underage. The transcript reveals that Jane Doe 2's living arrangement was kept a secret in the NXIVM community and not even the most senior NXIVM people knew anything about it. Furthermore, she did not know about any naked pictures for anyone, let alone a minor. The trial transcript from Mr. Raniere's trial, including testimony by Nancy Salzman, shows that her codefendant ordered everyone with knowledge to keep the existence of what the PSR calls a "sex cult" (i.e., "DOS") and any pictures a secret from Ms. Bronfman.

- <u>Jane Doe 3</u> – Jane Doe 3 and Ms. Bronfman joined NXIVM at about the same time in 2003. She was 20; Ms. Bronfman was 24. She did not know anything about Jane Doe's 3's immigration status when she first entered the country. At the time, Ms. Bronfman was a horse show jumper, living in Europe and Florida and competing around the world. The confusion lies in that she did help with Jane Doe 3's immigration, but in 2016 – more than a decade after Jane Doe 3 entered the country. By this time, Jane Doe 3 was the primary care taker for a dying friend. Both Jane Doe 3 and the friend lived with her co-defendant. *Ms. Bronfman's plea to the immigration offense and conviction arose out of these facts – her efforts to help Jane Doe 3 get back into the country to care*

General Counsel, Federal Bureau of Prisons
September 28, 2021
Page 4

> *for their mutual friend.* She had no role, whatsoever, in her initial entry into the country or her relationship with Mr. Raniere.
>
> - Jane Doe 4 – Jane Doe 4 and Ms. Bronfman joined NXIVM about the same time; Ms. Bronfman could not have "recruited" her. Jane Doe 4 herself testified at the co-defendant's trial that Ms. Bronfman did not know anything about her or her sisters' (Jane Does 2 & 3) immigration status and that she did not assist them getting into the country. Significantly, no other witness in the entire trial testified contrary to this.

Both Jane Doe 4's testimony and Lauren Salzman's testimony provided detailed accounts of how the sisters were brought into the country, and there was not one – ***not a single*** – mention of Ms. Bronfman. Instead, the trial testimony detailed how the sisters' parents and others arranged for their entry into the U.S. Accordingly, the record is clear that Ms. Bronfman did not "recruit" anyone into the country, let alone recruit them for sex with her co-defendant, Mr. Raniere. While, years later, she assisted Jane Doe 4's friends in resolving their immigration issues by hiring a lawyer, this was long after they had been in the country. In short, Ms. Bronfman knew nothing about the recruit-for-sex-related allegations until she read it in the newspaper. This was trial testimony and, significantly, at Ms. Bronfman's sentencing, Judge Garaufis reached the same conclusion.

To suggest that her offense qualifies as a "greatest severity offense" based on anything related to these women is contrary to the facts, the evidentiary record, and all logic and common sense. The prosecutors conceded, Judge Garaufis found, and the record was crystal clear that she had nothing to do with DOS or any sex crime of any sort. The greatest-severity-offense designation indisputably is based on her codefendants' offenses and conduct—not her offenses and conduct. This decision is arbitrary and unsupported.

Finally, it is noted that Ms. Bronfman was not charged with anything related to the BOP Program Statement Number 5100.08's Ch. 5, Sec. F's "sex offender" standard. This is significant because that standard provides it is to be applied "in the case where an inmate was charged with an offense that included one of the following elements" where the defendant enters into a plea bargain. That the Unit Manager justified the classification based in part on Ms. Bronfman having been "charge[d with] conspiracy" and did not refer to any of the standard's elements is telling as to the absence of any of those elements in the charge. This conclusion is not altered by the UM's reference to the "overall characteristics of the offense" since those characteristics did not include anything related to sexual misconduct. Also telling is that the Regional Director did not justify her conclusion with reference to what Ms. Bronfman was charged with. She went straight to concluding that she *had* done something related to sexual misconduct.[1]

---

[1] Please note that initially there was some confusion over what PSF the DSCC applied. Ms. Bronfman's case manager indicted it was a Sex Offense PSF. We later discovered upon receipt of our client's BP-337 (Inmate Designation Data Load Form) for which we were forced to file a FOIA request, that the PSF applied was for Greatest Severity Offense. Thus, several of the early responses administrative appeal responses from your staff tend to reference facts supposedly supporting each.

General Counsel, Federal Bureau of Prisons
September 28, 2021
Page 5

To be clear, as set forth in the accompanying appeal paperwork, Ms. Bronfman pled guilty to one count of conspiracy to conceal and harbor an alien for financial gain and one count of fraudulent use of identification. Neither of these is a sex-related offense nor a "greatest severity offense." Accordingly, she qualifies for a minimum-security designation. Judge Nicholas G. Garaufis, the trial court judge, specifically recommended that she be housed at a minimum-security facility for this reason.

I write to respectfully ask that you give particular attention to the submissions being made by Ms. Bronfman given the huge impact this determination has had and will continue to have on her life.

Sincerely yours,

Ronald S. Sullivan Jr.

Attachments: Appeals Package

---

It seems the case manager, then later the warden, and perhaps even now the regional director (based on the brevity of her decision) is confused on just how the DSCC applied the PSF.