UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLARE BRONFMAN,<br>    *Petitioner-Plaintiff*, | :<br>:<br>: |
| v. | :   No. 3:22-cv-838 (JAM) |
| | : |
| TIMETHEA PULLEN, et al.,<br>    *Respondents-Defendants*. | :   August 5, 2022<br>: |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>RESPONSE TO SHOW CAUSE ORDER AND MOTION TO DISMISS</u>**

This case challenges the Bureau of Prison's ("BOP") execution of Petitioner's sentence—namely, how the BOP determined Petitioner's custody classification. Petitioner Clare Bronfman's ("Petitioner") prayer for relief should be denied because the practice she challenges—that the BOP applied a Sex Offender Public Safety Factor ("PSF") to her custody classification even though she was never charged with a sex offense—is wholly within the discretion of the BOP.

Pursuant to the Court's Show Cause Order, ECF 10, the Rules Governing Section 2254 cases in the United States District Courts (the "Habeas Rules"), and Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Respondent Timethea Pullen, the Warden of Federal Correction Institute at Danbury ("FCI Danbury"), in her official capacity ("Respondent"), respectfully submits this memorandum of law in support of her motion to dismiss the instant Petition for Writ of Habeas Corpus, ECF No. 1.

# BACKGROUND

## I. LEGAL BACKGROUND

### A. Statutory and Regulatory Background

Under Title 18 U.S.C. §§ 4081 and 4082, "the Attorney General has complete and absolute discretion with respect to the incarceration, classification and segregation of lawfully convicted prisoners." *Pugliese v. Nelson*, 617 F.2d 916, 923 (2d Cir. 1980). "This broad discretionary authority has been delegated by the Attorney General to the Bureau of Prisons." *Id.* at 924 n.5 (citing 28 C.F.R. §§ 0.95, 0.96).

The Bureau of Prisons ("BOP") is responsible for determining the placement of prisoners. 18 U.S.C. § 3621[1]; *see also Tapia v. United States*, 564 U.S. 319, 331 (2011) (observing that the power to determine an inmate's programing and place of imprisonment "rests with the BOP"); *United States v. Kanagbou*, 726 F. App'x 21, 25 n.1 (2d Cir. 2018) ("[I]t is well established that the district court does not control how the Executive Branch carries out a defendant's sentence"; citing 18 U.S.C. § 3621(b)). BOP has created policies and procedures to guide it in carrying out its statutory mandate under § 3621. Under BOP's system, inmates are placed in "the most appropriate security level institution that also meets their programming needs and protects the public." U.S. Dept. of Justice, Fed. Bureau of Prisons, Program Statement No. P5100.08, Inmate Security Designation and Custody Classification, p. 1 ¶ 1 (Sept. 12, 2006) ("PS 5100.08").[2] BOP policies provide how to determine each inmate's "custody level," which indicates how much staff supervision a particular inmate requires. PS 5100.08, Ch. 6, p. 1. *See*

---

[1] 18 U.S.C. § 3621 appears in Subchapter C, Imprisonment, of Title 18, Part II, Chapter 229. Notably, 18 U.S.C. § 3625, which also appears in Subchapter C, provides that the Administrative Procedure Act ("APA") is inapplicable to "the making of any determination, decision, or order under this subchapter."

[2] *Available at* https://www.bop.gov/policy/progstat/5100_008.pdf.

2

*also Anderson v. Williams*, No. 3:15-cv-1364 (VAB), 2017 WL 855795, at *1 (D. Conn. Mar. 3, 2017) (analyzing and applying BOP's policy statement regarding custody).

According to PS 5100.08, the "security designation" or "security level" of each inmate is based on several factors, including records from the inmate's sentencing, background information from the Judgment and reports completed by the Probation Office, the inmate's history of escapes or attempts, and Public Safety Factors ("PSFs") designated by Bureau officials. *See* PS 5100.08 at Ch. 4, p. 7-14; *Anderson*, 2017 WL 855795, at *1. The BOP uses PSFs to account for "certain demonstrated behaviors which require increased security measures to ensure the protection of society." PS 5100.08, Ch. 2, p. 4; *Anderson*, 2017 WL 855795, at *2. BOP officials normally apply PSFs before an inmate's initial assignment to an institution, however, "additions or deletions may be made at anytime thereafter." PS 5100.08, Ch. 5, p. 7; *Anderson*, 2017 WL 855795, at *2.

That policy directs BOP to apply PSF F to any inmate with "documented behavior" that includes "(4) Any sexual act or contact not identified above that is aggressive or abusive in nature (e.g., rape by instrument, encouraging use of a minor for prostitution purposes, incest, etc.). Examples may be documented by state or Bureau of Prisons' incident reports, clear NCIC entries, or other official documentation." Program Statement 5100.08 at Ch. 5, p.8. BOP's policy further states that a "**conviction is not required for application of this PSF** if the Presentence Investigation Report (PSR), or other official documentation, clearly indicates the [] behavior occurred in the current term of confinement or prior criminal history." PS 5100.08, Ch. 5, p. 8 (emphasis added).

**B.    Constitutional Background**

The "Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these

3

interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). In the case of a prisoner, a "liberty interest" is freedom from restraint which "'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* at 223 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The Supreme Court has "rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right." *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976). In the case of classifications of inmates, "Congress has given federal prison officials full discretion to control these conditions of confinement . . . ." *Id.* Thus, court consistently hold that prisoners have no constitutional right to any specific classification. *See, e.g., Moody*, 429 U.S. at 88 n.9; *Green v. Armstrong*, 189 F.3d 460, 460 (2d Cir. 1999); *Pugliese v. Nelson*, 617 F.2d 916, 923 (2d Cir. 1980); *Pastrana v. Nalley*, No. 9:03-cv-302 (LEK/RFT), 2007 WL 952061, at *6 (N.D.N.Y. Mar. 29, 2007) ("The Supreme Court has held, and the Second Circuit has affirmed, that prisoners do not have a liberty interest under the Federal Constitution in 'prisoner classifications and eligibility for rehabilitative programs in the federal system.'").

## II.     FACTUAL BACKGROUND

### A.     Petitioner's Underlying Offenses, Criminal Conviction, and Sentencing

Petitioner was arrested by federal agents on July 24, 2018 and subsequently charged in a multi-count indictment. Petition ¶ 13. On April 19, 2019, Ms. Bronfman pled guilty to two charges: Conspiracy to Conceal and Harbor Aliens for Financial Gain, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(v)(I) and 1324(a)(I)(B)(i), and Fraudulent Use of a Means of Identification, in violation of 18 U.S.C. § 1028(a)(7). Petition ¶ 13.

Petitioner alleges that, as set forth in Judge Garaufis's Sentencing Memorandum, the conviction for the immigration offense at issue stems from Petitioner's role in securing a visa for a Mexican national who was employed by a company affiliated with a company called Nxivm,

4

an executive coaching and self-help organization founded by Ms. Bronfman's codefendant, Keith Raniere.  Petition ¶ 14.  Petitioner attached a true and correct copy of Judge Garaufis's Sentencing Memorandum to her Petition as Exhibit A.  Petition ¶ 15; Petition Ex. A, ECF No. 1-1 (Sentencing Mem.).

Petitioner further alleges that the United States Probation Office conducted a presentence investigation and drafted a PSR for, *inter alia*, the court's consideration in determining Petitioner's sentence; Petitioner attached to her Petition a true and correct copy of her PSR under seal as Exhibit B.  Petition ¶ 15; Petition Ex. B (under seal).

The Petition further alleges that the PSR contained "irrelevant, excruciating, and unnecessary detail concerning the alleged actions and activities of [Petitioner's] co-defendants defendants, including details and descriptions of Dominus Obsequious Sororium ('DOS'), a secret organization comprised of certain individuals, some of whom, but not all, had taken NXIVM courses."  Petition ¶ 17.  Petitioner alleges that she "objected to the fact that her PSR regurgitated details and descriptions related to the alleged sex trafficking offenses of Mr. Raniere and other co-defendants, but Judge Garaufis declined to rule on those objections."  Petition ¶ 17.  Petitioner attached to her Petition a true and correct copy of her Objections to the PSR under seal as Exhibit C.  Petition ¶ 17; Petition Ex. C (under seal).

Petitioner alleges that although her "*co-defendants* were convicted of several crimes, including 'sex trafficking conspiracy[] and two counts of sex trafficking,' no such conspiracy charges or substantive sex trafficking allegations were ever leveled against [Petitioner] and the description of those activities by others described in the PSR were not relevant conduct to her own offense of conviction."  Petition ¶ 18 (citing Sentencing Mem. at 6-7).

Petitioner alleges that "[n]ot only did [Petitioner] not participate in any of the DOS or alleged sex trafficking-related activities described in the PSR, she was not even aware of any such alleged activity. Indeed, members of DOS, including three of Ms. Bronfman's co-defendants, kept DOS a secret from Ms. Bronfman, as is the nature of any secret society, and she had no idea that the group existed until it was revealed publicly in 2017." Petition ¶ 19 (citing Sentencing Mem. at 6 n.2 ('Paragraph 14 [of the PSR Addendum discussing DOS] does not state that Ms. Bronfman was aware of or involved with DOS, or that she directly funded it.')) (all emphases omitted). The Petition then lays out additional allegations of facts to support Petitioner's argument that she was not aware of the sexual nature of her co-defendant's criminal conduct. Petition ¶¶ 20-28.

Petitioner claims that "[t]hese facts were recognized by Judge Garaufis in his Sentencing Memorandum where he made clear that [Petitioner] was not, and has not ever been, accused of any sexual offenses. Judge Garaufis went on to state that he wanted to make it 'crystal clear [that Petitioner] was not convicted of' the crimes perpetrated by her co-defendants. Instead, Judge Garaufis stated that he 'agree[d] with [Petitioner] that the available evidence does not establish that she was aware of DOS prior to June 2017 or that she directly or knowingly funded DOS or other sex trafficking activities,' . . . and that he did 'not find that [Petitioner] knowingly funded a sex cult.'" Petition ¶ 29 (citing Sentencing Mem. at 7, 16) (emphasis omitted).

Petitioner alleges that, after making those findings, "Judge Garaufis sentenced Ms. Bronfman to an 81-month prison sentence and recommended that she be detained at the minimum-security camp facility in Danbury, Connecticut." Petition ¶ 30 (citing Judgment and Commitment Order, at 2 (Oct. 7, 2020), Case No. 18-cr-204 (NGG), ECF No. 946). Petitioner

6

attached to her Petition a true and correct copy of the Order as Exhibit D. Petition ¶ 30; Petition Ex. D, ECF No. 1-2.

### B. Additional Facts from Petitioner's Petition Attachments

Respondent submits that the Court may also consider the following additional information contained in the attachments to the Habeas Petition.

Judge Garaufis's sentencing memorandum stated that, over the course of her time with Nxivm, Petitioner developed a "familiar practice of attacking" critics of Raniere, her co-defendant. Sentencing Mem. at 16-17.[3] The sentencing memorandum further states that, when confronted with information about DOS, Petitioner "doubled down on her support for Raniere." *Id*. at 17. Specifically, in June 2017 Petitioner became aware of

> DOS victims urgently reaching out to recover their 'collateral'—including, as [Petitioner] now knew, nude photographs and videos—and expressing obvious fear that this collateral would be exposed. With this knowledge, [Petitioner] could have begun to distance herself from Raniere and attempt to help those who were clearly in need. **Instead, she chose to double-down on her support for Raniere, even helping to facilitate further intimidation of DOS victims**.

*Id*. at 17 (emphasis added). Judge Garaufis then quoted in full a letter that Raniere sent to Petitioner for Petitioner's review, and described a pattern of letter-writing by Raniere and Petitioner that was designed to intimidate Raniere's sexual abuse victims. *See id*. at 18-19. Judge Garaufis noted that in September 2017 Petitioner "**work[ed] hand-in-hand with Raniere to intimidate and silence victims of Raniere's brutal campaign of sexual abuse and exploitation**." *Id*. at 19 (emphasis added).

---

[3] Respondent notes that the Sentencing Memorandum is attached to the Habeas Petition, at ECF No. 1-1. Additionally, the sentencing memorandum was entered on the docket in Petitioner's criminal case to substantiate the judge's reasoning for imposing Petitioner's sentence, and therefore is the type of "official documentation" referenced on PS 5100.08, Ch. 5, p. 8.

7

### C. Petitioner's Custody Determination

After sentencing, the Federal Designation and Sentencing Computation Center (the "Center") determined Ms. Bronfman's initial custody classification and security designation, including applying a PSF, based on a number of factors. *See* ECF No. 1-3 at 1. BOP stated that "[p]er the Revised Presentence Investigation Report, Docket No. 0207 1:18cr204-(S-3)001(NGG), prepared on October 6, 2020 by the Eastern District of New York, [Petitioner] participated in efforts to recruit and secure immigration status for non-citizens so they could work in one or more Nxivm-affiliated organizations or to become sexual partners for a co-defendant." *Id.* at 1. The BOP noted that three sisters, Jane Does 2, 3, and 4, were "young" (ages 14, 16, and 20) upon entering the United States, and that at some point a co-defendant initiated sexual relationships with all three sisters. *See id.* at 1. BOP additionally stated that "[d]ue to the charge of conspiracy and overall characteristics of the offense, the Designation and Computation Center . . . deemed it appropriate to apply this PSF as the conspiracy relates directedly to a sexual nature." *Id.* at 5.

BOP identified that the PSF's Element 4 is defined as "any sexual act or contact . . . that is aggressive or abusive in nature." ECF No. 1-4 at 1. BOP found the standard was satisfied because Petitioner "participated in efforts to recruit and secure immigration status for non-citizens, some of whom were minors, so they could become sexual partners for a co-defendant." *Id.*

Petitioner is presently incarcerated at FCI-Danbury. Petition ¶¶ 7-8.

### III. PLAINTIFFS' PETITION FOR A WRIT OF HABEAS CORPUS

Petitioner filed her writ of habeas corpus on July 5, 2022. ECF No. 1 ("Petition").

Bureau of Prisons Regulations require all inmates to express their grievances using an internal, four-step process set forth in the Bureau of Prisons' Administrative Remedy Program.

8

*See* 28 C.F.R. § 542.  Petitioner claims that she has exhausted these administrative remedies.  Petition ¶¶ 37-39.  Respondent does not challenge the Petition with respect to exhaustion.

Petitioner alleges that she has been subjected to unlawful conditions of confinement within the Federal Bureau of Prisons ("BOP") following her September 30, 2020, sentencing by U.S. District Judge Nicholas G. Garaufis of the United States District Court for the Eastern District of New York.  Petition ¶ 1.

Petitioner alleges that BOP has wrongly applied a "sex offender" Public Safety Factor ("PSF") against her.  Petition ¶ 2.  Petitioner alleges that BOP's application of the sex offender PSF "abused its discretion and violated its own internal guidelines and policies." *Id*.

Petitioner alleges that BOP relied on "demonstrably false factual claims to justify the PSF designation" and that "there is no credible evidence to support the BOP's determination that Petitioner is a sex offender."  Petition ¶¶ 2-3.

Petitioner alleges that Judge Garaufis's sentence did not incorporate any sex offender finding.  Petitioner ¶ 3.

Petitioner claims that "the BOP has either fundamentally misunderstood or mischaracterized her Presentence Investigation Report ('PSR') or relied on demonstrable and provable factual errors to support its determination. The resulting application of the PSF as to [Petitioner] is therefore arbitrary and capricious and constitutes an abuse of the BOP's discretion."  Petition ¶ 3.

Petitioner asks this Court to order BOP "to remove the PSF in her file so that she may be re-designated to a more appropriate BOP facility."  Petition ¶ 4.  She alleges the Court has authority to do so pursuant to 28 U.S.C. §§ 2241(a) and (c)(1), 2242, and 2243.  Petition ¶ 4.

Petitioner claims that "[t]he proper designation will [] affect her rights and the availability of certain benefits under the Formerly Incarcerated Reenter Society Transformed Safely Transitioning Every Person Act, i.e., the 'FIRST STEP Act.'"  Petition ¶ 4.

Finally, Petitioner alleges that "[t]he consequences of this mis-designation are huge to" Petitioner due to various collateral consequences, including making her ineligible for the CARES Act.  Petition ¶¶ 5, 33-34; *see also* PS 5100.08, Ch. 5, p. 8 (stating that the application of the sex offender PSF precludes an inmate from being designated to any BOP institution with a security classification below "low").

## STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 12(b)(6), Respondent moves to dismiss Petitioner's Writ of Habeas Corpus for failure to state a claim.

### I.  Failure to State a Claim

The "Court reviews a motion to dismiss a habeas petition according to the same principles as a motion to dismiss a civil complaint under Fed. R. Civ. P. 12(b)(6)." *Spiegelmann v. Erfe*, No. 3:17-cv-2069 (VLB), 2018 WL 1582549, at *1 (D. Conn. Mar. 29, 2018); *see also Anderson*, 2017 WL 855795, at *5-6 (reviewing motion to dismiss Section 2241 petition pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)).

The Supreme Court's basic plausibility standard requires the petition to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**II.     Habeas Corpus**

The Court has jurisdiction under 28 U.S.C. § 2241 to address the execution of a prisoner's sentence. *See Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001) ("A motion pursuant to § 2241 generally challenges the execution of a federal prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions.") (citing *Chambers v. United States*, 106 F.3d 472, 474–75 (2d Cir. 1997)); *see also Carmona v. BOP*, 243 F.3d 629, 632 (2d Cir. 2001) ("A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction.").

Habeas relief may be available when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1). "[I]t is important to note that the nature of [the] Court's review on habeas is different from what would be available under the APA." *LaSorsa v. Spears*, 2 F. Supp. 2d 550, 558 (S.D.N.Y. 1998) (Sotomayor, J.), *aff'd sub nom. Lasorsa v. Menifee*, 182 F.3d 900 (2d Cir. 1999). "Were the APA's judicial review provisions applicable to BOP's decision . . . this Court would in effect be sitting as an appeals court, reviewing the record of the BOP proceedings and determining whether, on that record alone, BOP's decision was supported by substantial evidence." *Id*. at 558–59. However "the APA is expressly made inapplicable to the review of BOP's decision by 18 U.S.C. § 3625." *Id*. at 559. Here, "even if BOP's stated reasoning in its administrative process was flawed, as long as BOP's arguments to this Court on the habeas petition are sufficient to demonstrate the legality of their position, the habeas petition must be denied." *Id*.

**ARGUMENT**

**III.    The Court Lacks Authority to Dictate BOP's Discretionary Determinations Concerning the Application of Public Safety Factors.**

Petitioner's claims concerning her security classification should be dismissed under Rule 12(b)(6). Habeas relief is not warranted because Petitioner has not identified any statute nor Constitutional right that BOP has violated with respect to her detention. Regarding her purported Constitutional rights, Petitioner has no liberty interest in her security level, custody classification, or place of confinement, and therefore has not established that the Respondent violated her rights under the Due Process clause.

The Fifth Amendment's Due Process Clause protects persons against "depriv[ations] of life, liberty, or property." U.S Const. Amend. V. To establish a violation of due process, a petitioner must demonstrate that he or she possessed a life, liberty or property interest, a government official deprived him of one of those interests, and the procedures provided prior the deprivation of that interest were constitutionally inadequate or insufficient. *See Kerry v. Din*, 135 S. Ct. 2128, 2132 (2015). "[I]t remains the case that no process is due if one is not deprived of 'life, liberty, or property.'" *Id.* (citing *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam)).

The Supreme Court has concluded that a federal prisoner has no liberty interest "sufficient to invoke due process" in his or her "prisoner classification and eligibility for rehabilitative programs in the federal system." *Moody v. Daggett.* 429 U.S. 78, 88 n.9 (1976) ("We have rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right. . . . Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due

12

process."); *see also Montanye v. Haymes*, 427 U.S. 236, 242 (1976) ("As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.").

Federal courts have consistently held that a federal prisoner has no liberty interest in his or her security classification based on a prison official's determination of the applicability of a particular PSF. *See Anderson*, 2017 WL 855795, at *8; *see also Marti v. Nash*, 227 F. App'x 148, 150 (3d Cir. 2007) (relief unavailable in § 2241 habeas petition because petitioner had no liberty interest in security classification based on assignment of the "greatest severity" PSF); *Baranwal v. Stone*, No. CV 314-098, 2015 WL 171410, at *3 (S.D. Ga. Jan. 13, 2015) ("[B]ecause federal prisoners do not possess a liberty interest in their security classification, a claim that the PSF deprives Petitioner of liberty without due process in violation of the Fifth Amendment must fail."); *Rodriguez-Leon v. Zickefoose*, No. 111-1172 (RBK), 2012 WL 32924, at *3 (D.N.J. Jan. 3, 2012) ("Petitioner has no liberty interest in avoiding the assignment to him of a Greatest Severity Public Safety Factor. Congress has delegated the authority to determine a prisoner's appropriate classification and place of confinement to the BOP."); *Embrey v. Sepenak*, No. 0:11-CV-00119-HRW, 2012 WL 1205721, at *4 (E.D. Ky. Apr. 10, 2012) ("The incidental effect of a PSF does not create a due process violation, even if the PSF classification adversely impacts a federal inmate's eligibility to participate in certain BOP programs, privileges, and incentives").

Petitioner has not alleged that the assignment of the instant PSF has caused her to suffer an atypical or significant hardship compared to the ordinary conditions of confinement that she might expect to experience in federal prison. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995)

13

(liberty interests protected by the Due Process Clause "will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.") (citations omitted); *see also Nimmons v. Schult*, No. 9:07-CV-927, 2008 WL 5056744, at *2 (N.D.N.Y. Nov. 24, 2008) ("Petitioner contests his PSF classification leading to the restriction on his telephone privileges. It is well established that a prisoner cannot challenge the loss of such privileges by way of a habeas corpus petition under" § 2241).[4]

The only potential disadvantages of the PSF that Petitioner mentions is that it might impact her eligibility for release to a halfway house or a release on a furlough, under the FIRST STEP Act or CARES Act. *See* Petition ¶¶ 4-5. These possible consequences do not constitute atypical or significant hardships that would implicate a protected liberty interest. *See Green v. Armstrong*, 189 F.3d 460 (2d Cir. 1999) (holding that alleged loss of furloughs and opportunities for other early release programs does not constitute a deprivation of "life's necessities"); *Pugliese v. Nelson*, 617 F.2d 916, 923 (2d Cir. 1980) (federal inmates had no due process right to avoid their classification as Central Monitoring Cases, a designation that was likely to delay[] or preclude[] a prisoner from being favorably considered for furloughs, transfer, work releases, participation in community activities and even early parole" in the future because the inmates were not entitled to those freedoms as part of their convictions or sentences); *see also Becerra v. Miner*, 248 F. App'x 368, 370 (3d Cir. 2007) ("Being classified with a PSF of deportable alien

---

[4] Like the petitioner in *Nimmons*, the Petitioner here does not challenge that her codefendant actually engaged in crimes of a sexual nature; she merely argued—both here and to the sentencing judge—that such evidence is irrelevant to her based on her pre-2017 ignorance of the sexual crimes. *See Nimmons*, 2008 WL 5056744, at *2 ("Petitioner neither challenges the [disciple hearing officer's] determination with respect to the incident report against him, nor the sanctions imposed by the" disciple hearing officer).

14

and its resulting consequences of disqualification for certain programs, as with any other security classification, is not outside what a prisoner may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law.") (internal quotation marks and citations omitted); *Reyes v. Holland*, No. 0:11-CV-00090-HRW, 2012 WL 639469, at *3 (E.D. Ky. Feb. 27, 2012) (holding that prisoner failed to show that his PSF of "Deportable Alien," which deprived him of the ability to seek a transfer to prison near his family, constituted an atypical or significant hardship in relation to ordinary incidents of prison life).

### IV. BOP's Application of the Sex Offender PSF to Petitioner is Appropriate Even Without Any Sex-Offense-Related Conviction.

Even if Petitioner did have a property or liberty interest in her classification, BOP's application of the sex offender PSF to Petitioner is appropriate and within BOP's discretion. Petitioner challenges her PSF designation as a Sex Offender because she was never convicted of any sex-related offense. This does not matter, because Petitioner's PSR and sentencing memoranda indicates she has engaged in "sexual . . . contact that is aggressive or abusive in nature." *See* PS 5100.08; Sentencing Mem.; PSR (filed under seal as Ex. B).

The Second Circuit has noted that "judicial intervention into the classification of prisoners for monitoring and control purposes would almost inevitably involve the federal courts in the day-to-day operations of our prison system, which are better left to the expertise of prison administration authorities." *Pugliese v. Nelson*, 617 F.2d at 925. The Supreme Court further noted that

> the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

15

*Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (citations omitted) (cited in *Pugliese v. Nelson*, 617 F.2d at 925); *Pastrana*, 2007 WL 952061, at *6.

Classification of inmates is a matter within the discretion of prison officials. *Anderson*, 2017 WL 855795, at *8. In exercising this discretion, the BOP may assign a Sex Offender PSF without a sexual offense conviction, based solely on information within a PSR or other official documentation if the PSR or that documentation indicates this behavior has occurred. *Isler v. Grondolsky*, 942 F. Supp. 2d 170, 175-76 (D. Mass. 2013) (citing *Grayson v. BOP*, No.5:11cv2, 2011 WL 7154384, at *4-5 (N.D.W. Va. July 22, 2011) (holding that BOP can rely on information in a PSR for security classification as sex offender even though inmate was not convicted of a sexual offense)).

The BOP applied the Sex Offender PSF to Petitioner because her PSR and sentencing memorandum showed that Petitioner "participated in efforts to recruit and secure immigration status for non-citizens so that they could work in one or more Nxivm-affiliated organizations or to become sexual partners for a co-defendant." ECF No. 1-3 at 1. Three sisters "are Mexican nationals who were brought to the United States when they were young . . . in order to study the Nxivm curriculum. A co-defendant initiated sexual relationships with all three sisters." *Id.* Thus, BOP's administrative justification observed that Petitioner had contact with the sexual abuse victims of her co-defendant, Raniere. *Id.* at 1, 5; ECF No. 1-4 at 1.

Further, additional information not specifically cited in BOP's responses to Plaintiff's grievances also supports BOP's finding.[5] First, Judge Garaufis found that Petitioner had been

---

[5] Unquestionably, the Court is permitted to consider all of this information. *See LaSorsa*, 2 F. Supp. 2d at 559 ("[E]ven if BOP's stated reasoning in its administrative process was flawed, as long as BOP's arguments to this Court on the habeas petition are sufficient to demonstrate the legality of their position, the habeas petition must be denied."); *see also id.* at 558 (noting that the Court is not limited to the record below and citing 28 U.S.C. §§ 2243, 2246).

16

willfully ignorant of the sexual nature of Raniere's crimes and abuse. Sentencing Mem. 23 ("I find it clear that, in her own words, [Petitioner] did not want to know" before September 2017 about DOS and Raniere's sex crimes), 24 ("I find that any such blindness [to Raniere's crimes and the sex trafficking that occurred within the Nxivm community] was willful and cultivated"). Thus, any argument about the timing of Petitioner's immigration crime *vis a vis* her actual knowledge of Raniere's abuse is irrelevant—Judge Garaufis described her knowledge as a deliberately cultivated ignorance. *See* Sentencing Mem. 24 (noting that while Petitioner "maintains that she was an innocent bystander to Raniere's abhorrent conduct . . . any such blindness was willful and cultivated").

Additionally, Judge Garaufis's sentencing memorandum explicitly found that Petitioner participated in sending threatening and intimidating letters to her co-defendant's victims *after* Petitioner became aware that her co-defendant, Raniere, possessed sexually-explicit materials, called "collateral," which the victims had requested be returned to them. Sentencing Mem. 18-19. In fact, Petitioner sent those aggressive, threatening, abusive letters *in response to* Raniere's victims asking that their "collateral" be returned to them. *Id*. This type of aggressive and abusive contact with sexual abuse victims clearly satisfies BOP's PSF criteria.

Oddly, Petitioner appears to argue that this Court should apply an "arbitrary and capricious" standard of review to BOP's classification decision. *See, e.g.*, Petition ¶¶ 62, 71-72; Mot. for Order to Show Cause Pursuant to 28 U.SC. § 2243, ¶ 2, ECF No. 6. Respondent can find no support for such a proposition. As explicitly stated in 18 U.S.C. § 3625, neither the APA nor its "arbitrary and capricious" standard of review apply to the BOP's classification decisions under 18 U.S.C. § 3621. Petitioner's citation to *Accardi v. Shaughnessy*, 347 U.S. 260 (1954) is also unavailing. *See* Petition ¶¶ 67-68, 71. The Second Circuit has not recognized *Accardi* as

17

creating an "arbitrary and capricious" standard of review for whether an agency has applied its own regulations properly. It appears Petitioner has found one out-of-circuit district court case, *Stafford v. Pratt*, No. Civ. A. 3:01-cv-35-M, 2001 WL 548898 (N.D. Tex. May 22, 2001), which cited to *Accardi* and then (without citation to *Accardi* for any such standard, or indeed, to any authority for the standard) engaged in asking whether BOP's application of a PSF to a prisoner was "arbitrary and capricious."[6] Respectfully, Respondent requests that the Court decline Petitioner's invitation to apply a brand new "arbitrary and capricious" standard of review to BOP's incarceration classification decision.

Despite Plaintiff's request to create new law, it is clear that any relief for her hinges on traditional habeas standards, *i.e.*, her custody being in violation of a statute or her Constitutional rights. *See* 28 U.S.C. § 2241(c)(1). Since she has identified no statute that BOP has violated, her only hope is the Constitution. But, courts have consistently rejected constitutional challenges to PSF classifications made in accordance with BOP regulations. *See Bloom v. Quay*, 3:15-cv-1541 (AVC) (D. Conn. Nov. 30, 2016) (holding a federal inmate ". . . does not have a protected liberty interest in his PSF rating" and granting a motion to dismiss); *Grayson v. BOP*, 2011 WL 7154384, at *4–5 (N.D.W. Va. July 22, 2011) (holding BOP can rely on information in Presentence Investigation Report ("PSR") for security classification as sex offender even though inmate was not convicted of a sexual offense); *McCombs v. DOJ*, 2006 WL 3169530 at *2 (N.D.

---

[6] Factually, the *Stafford* case is distinguishable from the present case. According to the *Stafford* court, BOP's existing regulations prohibited application of a sex offender PSF to an inmate who was previously charged with an offense that included criminal sexual behavior, where the prior charge was dismissed or not prosecuted. 2001 WL 548898, at *2. But, if the defendant was not convicted of the charge "as a result of a plea bargain," BOP could apply the PSF. *Id*. In *Stafford*, the prior offense was charged, and the court's inquiry was whether the petitioner was "not convicted of a criminal sexual offense 'as a result of a plea bargain.'" *Id*. Here, Petitioner has not alleged that any sex offense was ever charged, so there is no possibility that the BOP's decision in this case presents the issues that troubled the *Stafford* court.

Ohio Oct. 31, 2006) (holding that although inmate had been adjudged delinquent, and was not convicted of a sexual offense, BOP could classify him as a sex offender since, "as a matter of law, claims based on classification procedures do not state a constitutional violation"); *Talouzi v. O'Brien*, 2006 WL 625292 at *7 (E.D. Ky. Mar. 10, 2006) ("This Court finds that there is no due process violation herein because there is no liberty interest with regard to the sex offender PSF."); *Green v. BOP*, 2002 WL 32619483, at *3–4 (D. Minn. Jan. 29, 2002) (holding BOP can rely on pre-sentence investigation to classify inmate as a sex offender).

BOP's decision applying the sex offender PSF to Petitioner finds ample support in the "official documentation" describing her crimes, her co-defendant's crimes, and her behavior documented during her prior criminal history. Therefore, Petitioner has failed to show any Constitutional deprivation, and has failed to show that BOP's decision violates its own standards.

## CONCLUSION

For the foregoing reasons, Respondent respectfully requests that the Court deny the relief sought by the Petitioner and dismiss this Petition with prejudice.

> Respectfully submitted,
>
> VANESSA ROBERTS AVERY
> UNITED STATES ATTORNEY
>
> */s/ Natalie N. Elicker*
> NATALIE ELICKER (ct28458)
> ASSISTANT U.S. ATTORNEY
> 157 Church Street, 25th Floor
> New Haven, CT 06510
> T: (203) 821-3700
> F: (203) 773-5373
> Natalie.Elicker@usdoj.gov