UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLARE BRONFMAN,<br><br>      Petitioner-Plaintiff,<br>v.<br><br>TIMETHEA PULLEN, in her official capacity as Warden of FCI Danbury; FEDERAL BUREAU OF PRISONS; BRYAN ANTONELLI, in his official capacity as Acting Regional Director of the Federal Bureau of Prisons' Northeast Region; MICHAEL CARVAJAL, in his official capacity as Director of the Federal Bureau of Prisons,<br><br>      Respondents-Defendants. | Case No. 22-Civ.-838 (JAM)<br><br>**ORAL ARGUMENT REQUESTED** |

**PETITIONER CLARE BRONFMAN'S REPLY BRIEF**

      The government's Memorandum of Law in Response to Show Cause Order and Motion to Dismiss is remarkable – not for what it contains, but for what is omits. The government's brief is silent—utterly and completely silent—in response to Ms. Bronfman's central argument and inexplicably silent with respect to the government's own articulated justifications that it set forth in support of its decision to apply a sex offender Public Safety Factor ("PSF") to Ms. Bronfman. Instead of even attempting to justify the basis upon which the government putatively based its decision to apply the sex offender "PSF," the government, instead, erects a strawman and spills significant ink responding to an argument that Ms. Bronfman never made. Finally, the government makes a curious jurisdictional argument that is antagonistic to well-settled law of this Circuit and, significantly, contradictory to this Court's own holdings.

      Should it be helpful to the Court, Petitioner-Plaintiff respectfully requests oral argument on this application.

For all the reasons below, Ms. Bronfman respectfully requests that the Court issue a writ of habeas corpus directing Respondents to remove the sex offender PSF applied to her, and all additional and further relief that this Court may deem just and proper.

## I. BOP's Application of a Sex Offender PSF is Unfair, Arbitrary and Capricious

It is not disputed that the government clearly set forth the basis for its decision to apply the sex offender PSF to Ms. Bronfman during the administrative appeal process. The government specifically claims that Ms. Bronfman assisted "Jane Does 2, 3, and 4" in "entering or remaining in the United States," whereupon Ms. Bronfman's co-defendants (significantly, not Ms. Bronfman herself) "initiated sexual relationships" with the three women. ECF No. 1-3, at 1. Ms. Bronfman's Petition proved the government's assertion to be flatly and demonstrably wrong. It is simply not based on any fact, and the record does not support it.

The claim that Ms. Bronfman "recruited" Jane Does 2, 3, and 4 represents a physical impossibility. As set forth in previous filings and clearly in the record, Ms. Bronfman was showjumping around Europe at the time Jane Does 2, 3 and 4 were recruited. *See* ECF No. 1-5, at 1, 3; ECF No. 1-6, at 2, 6. Ms. Bronfman, at the time, did not know any of the Jane Does. Ms. Bronfman was not even a member of NXIVM when the Jane Does 2, 3, and 4 were recruited. ¶ 42, Pet.; ECF No. 1-5, at 1. Accordingly, the government's central argument is factually untrue. Ms. Bronfman did not and could not have recruited Jane Does 2, 3, and 4 to an organization to which Ms. Bronfman did not yet belong.

As a matter of simple logic, the government's conclusion does not flow from the irrefutable premises. Ms. Bronfman did not recruit any of the persons whom the government claims. It follows that, inasmuch as Ms. Bronfman did not recruit Jane Does 2, 3, and 4, she did not and could not

2

have recruited them, including the minor, for sexual relations with her co-defendants. Ms. Bronfman had never met them and had no knowledge whatsoever of how or why they were recruited to NXIVM. What is most outrageous is that the trial transcript reveals, in witness testimony, how Jane Does 2, 3, and 4 were recruited to NXIVM. No witness testified that Ms. Bronfman was involved. ¶ 54, Pet. BOP claims that Ms. Bronfman recruited Jane Doe 4 into NXIVM notwithstanding that Jane Doe 4 testified at the trial and did not mention Ms. Bronfman as having any role in her recruitment to NXIVM or any role and in facilitating any sexual relationship with any of Ms. Bronfman's co-defendants, *ibid*. In light of the foregoing, that BOP makes this claim and the government defends it offends basic notions of justice and fair play.

The foregoing is undisputed. Rather than admitting that it erred in applying the PSF to Ms. Bronfman, the government simply ignores these unassailable facts. There is not one – not a single – mention of Ms. Bronfman's rebuttal to the central justification that the government itself advanced in support of Ms. Bronfman's designation. Rather, the government responds to arguments that Ms. Bronfman never made, and, for the first time, introduces a rambling set of after-the-fact arguments that purport to justify its clearly illegal, arbitrary, and capricious application of the sex offender application.

The government, instead of even making a passing attempt at justifying its initial claims, spends five of its eight pages in the Argument section of its brief claiming that the application of the sex offender PSF is appropriate even without a sex-offense related conviction. Rep. Memo at 15-19. This proposition is correct; we agree. And, nothing in Ms. Bronfman's brief contradicts this broad claim. Accordingly, the government knocks down a strawman instead of responding to the argument Ms. Bronfman actually made. Ms. Bronfman's point here is that *if* she had been convicted of a sex-related offense, the analysis stops. The government would have a proper ground

to apply a sex offender PSF. In the absence of a conviction on a sex-offense related crime, the government is required to make an additional showing; to wit: the conditions promulgated in the BOP's Program Statement governing the sex offender security classification. To apply the sex offender classification, the inmate must be found to have "(1) [e]ngag[ed]in sexual contact with another person without obtaining permission to do so…; (2) [p]ossess[ed], distribut[ed] or mail[ed] child pornography or related paraphernalia; (3) [a]ny sexual contact with a minor…; or (4) [a]ny sexual act or contact…that is aggressive or abusive in nature." ECF No. 1-3, at 4 (referring to BOP Program Statement 5100.08, Chapter 5, Section F).

Not only does the government ignore its initial justification for the PSF once faced with Ms. Bronfman's petition, which demonstrates that the government is demonstrably and provably wrong in its factual assertions, the government ignores the requisites of its own program statement in asserting alternative grounds that purport to justify its decision. There is no evidence whatsoever, and none adduced by the government, that Ms. Bronfman engaged in any of the conduct listed in the BOP Program Statement.

## II.   This Court has Authority to Adjudicate Ms. Bronfman's Claim

Respondents' opposition brief presents a singular relevant argument: that the habeas petition should be denied for failure to state a claim. That argument is grounded in Respondents' incorrect assertion that Ms. Bronfman has not shown a violation of a constitutionally protected interest. Respondents argue that "[f]ederal courts have consistently held that a federal prisoner has no liberty interest in his or her security classification based on a prison official's determination of the applicability of a particular PSF." Rep. Memo at 13. Respondents cannot, however, cite any controlling precedent for this claim. And while it may be true that Ms. Bronfman is not entitled to any *particular* classification while incarcerated, she retains two particular interests that have been

violated here: First, Ms. Bronfman has a constitutionally protected liberty interest in not being wrongfully classified as a sex offender. Second, she has a constitutionally protected interest in BOP following its own regulations. Beyond this one relevant argument, Respondents offer no reason to dismiss the petition or deny the writ.

### A. Ms. Bronfman has a Liberty Interest in Not Being Wrongfully Classified as a Sex Offender.

"Prisoners do not shed all constitutional rights at the prison gate." *Sandin v. Conner*, 515 U.S. 472, 485 (1995). An incarcerated inmate's "liberty interest" is implicated when prison officials impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*, at 484.

Respondents argue at length that any particular *classification* does not represent an "atypical and significant hardship." But that generalized statement completely obfuscates the very particular harm that BOP is perpetrating here. Ms. Bronfman is not objecting to some mere procedural irregularity because she is unhappy with a discretionary decision made by BOP. What she objects to—quite rightly—is that BOP has wrongfully slapped the label of "sex offender" on her, a label which is as stigmatizing as it is factually inaccurate in this case. That is quite literally outrageous, not based in any evidence, and life altering.  Ms. Bronfman's wrongful classification as a *sex offender* will significantly alter not only the terms of her confinement and her eligibility for certain programs and benefits as an inmate,[1] but her treatment in society more generally.

As this very Court has observed, "[t]he Second Circuit has held that 'wrongly classifying an inmate as a sex offender may have a stigmatizing effect *which implicates a constitutional liberty*

---

[1] *See, e.g.,* ¶ 34, Petition (sex offender PSF makes an inmate ineligible for Community Corrections Center assignment as well as early release under the First Step and CARES Acts).

*interest.*'" *Hill v. Tyburski*, 2020 WL 1914929, at *4 (D. Conn. Apr. 19, 2020) (Meyer, J.) (initial review order), quoting *Vega v. Lantz*, 596 F.3d 77, 81-82 (2d Cir. 2010) (emphasis added here).

> To establish such a "stigma plus" claim, a plaintiff must show (1) "the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false," and (2) "a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (Sotomayor, J.) (cleaned up).

*Notz v. Connecticut Comm'n on Human Rights*, 2021 WL 538098, at *5 (D. Conn. Feb. 13, 2021) (Meyer, J.).

This is precisely what has happened to Ms. Bronfman. The label of sex offender through the PSF is certainly an "utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false" and Ms. Bronfman quite obviously claims that it is false. It is not disputed that the government set forth its position as to the basis for its decision to apply the sex offender PSF to Ms. Bronfman during the administrative appeal process. The government specifically claims that Ms. Bronfman assisted "Jane Does 2, 3, and 4" in "entering or remaining in the United States," whereupon Ms. Bronfman's co-defendants "initiated sexual relationships" with the three women. Ms. Bronfman has shown this to be flatly, provably, and demonstrably incorrect, and this Reply Brief reiterates how and why the government's theory cannot stand.

**B. Ms. Bronfman has a Liberty Interest in BOP Following its Own Regulations.**

Respondents argue that the writ should be denied for failure to state a claim, an argument founded almost entirely on the proposition that the "Court's review on habeas is different from what would be available under the APA." Rep. Memo at 11, citing *LaSorsa v. Spears*, 2 F. Supp. 2d 550, 558 (S.D.N.Y. 1998) (Sotomayor, J.), *aff'd sub nom. Lasorsa v. Menifee*, 182 F.3d 900 (2d Cir. 1999). This argument is yet another strawman: Ms. Bronfman has never argued that the

6

Administrative Procedure Act should guide this Court's reasoning. Rather, she asks that the Court hold BOP to follow its own regulations as it is required to under law. *E.g., United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266-67 (1954); *Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020) ("Under deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations.").

Indeed that is *precisely* how the court in *LaSorsa*—the very case Respondents cite—reasoned. In that case the petitioner sought to compel the Bureau of Prisons to give him a one-year sentence reduction based on a statute that allowed BOP to do so if he completed a drug rehabilitation program. The court reasoned there that although BOP had "unfettered discretion under the statute, regulations issued have the force of law and may limit BOP's own discretion further than the statute does. The Court must therefore analyze the regulation to see if BOP has done so." *LaSorsa*, 2 F. Supp. 2d 550, 556 (S.D.N.Y. 1998), *aff'd sub nom. Lasorsa v. Menifee*, 182 F.3d 900 (2d Cir. 1999).

The regulation in question here is the Program Statement, which allows for the application of the sex offender PSF only where "official documentation[] clearly indicates" (emphasis added) that the inmate engaged in one of a few enumerated actions, including "(1) [e]ngaging in sexual contact with another person without obtaining permission to do so …; (2) [p]ossessing, distributing or mailing child pornography or related paraphernalia; (3) [a]ny sexual contact with a minor …; [or] (4) [a]ny sexual act or contact … that is aggressive or abusive in nature." As will be made clear, nothing in the "official documentation" comes anywhere near "clearly indicat[ing]" that Ms. Bronfman engaged in any of these enumerated actions. Respondents implausibly argue that the sentencing memorandum demonstrates that Ms. Bronfman engaged in "sexual act or contact . . . that is aggressive or abusive in nature." Rep. Memo at 15.

While declining to respond at all to any of Ms. Bronfman's substantive arguments, Respondents instead repeat the summary claim that "[t]he BOP applied the Sex Offender PSF to Petitioner because her PSR and sentencing memorandum showed that Petitioner 'participated in efforts to recruit and secure immigration status for non-citizens so that they could work in one or more Nxivm-affiliated organizations or to become sexual partners for a co-defendant.'" Rep. Memo at 16. But that is not what happened; it was a physical impossibility.

But, Respondents stay silent on these pesky details. Instead, Repondents aver a new – never presented throughout the pendency of the administrative process – argument. They now argue, for the first time, in their opposition brief that the particular activity that would justify the PSF in dispute is that Ms. Bronfman participated in sending letters—by and through counsel—to parties who had threatened legal action against co-defendants. Rep. Memo at 17. Respondents omit the fact that these letters concerned the recipients alleged theft of NXIVM's intellectual property. But, even assuming the truth of BOP's claim—that Ms. Bronfman sent mean letters—that does not fall within BOP's own regulations for PSF. Causing letters to be sent by and through counsel does not constitute (1) engaging in sexual contact or (2) possessing child pornography, (3) engaging in sexual contact with a minor, or (4) engaging in aggressive or abusive sexual contact. Each of the BOP's own regulations that justify the imposition of a PSF require some form of "sexual contact" or possessing "child pornography." Sending letters through counsel constitutes neither.

## CONCLUSION

For the foregoing reasons, Petitioner-Plaintiff Clare Bronfman respectfully requests that the Court deny Respondents' motion to dismiss and issue a writ of habeas corpus pursuant to 28

U.S.C. § 2243 directing Respondents to remove the sex offender PSF applied to Petitioner along with all additional and further relief that this Court may deem just and proper.  Petitioner-Plaintiff respectfully requests oral argument on this application, should that be helpful to the Court.

Dated: September 12, 2022                    Respectfully submitted,

**LAW OFFICE OF MICHAEL L. CHAMBERS, JR.**

By:__/s_____
Michael L. Chambers
Law Office of Michael L Chambers Jr.
2 Congress St
Hartford, 06114
michael@mchamberslaw.com

**RONALD SULLIVAN LAW, PLLC**

Ronald S. Sullivan Jr.
(admitted pro hac vice)
1300 I Street, N.W., Suite 400 E
Washington, D.C. 20005

**LEVIN & ASSOCIATES, PLLC**

Duncan Levin
(admitted pro hac vice)
44 Court Street, Suite 905
Brooklyn, New York 11201
Tel.: (212) 330-7626
dlevin@levinpllc.com

*Counsel for Petitioner-Plaintiff Clare Bronfman*

## **REQUEST FOR ORAL ARGUMENT**

Petitioner requests oral argument on Respondents' Motion to Dismiss Petitioner's Petition.