UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLARE BRONFMAN,<br><br>    Petitioner-Plaintiff,<br><br>    v.<br><br>TIMETHEA PULLEN, in her official capacity as Warden of FCI Danbury; FEDERAL BUREAU OF PRISONS; BRYAN ANTONELLI, in his official capacity as Acting Regional Director of the Federal Bureau of Prisons' Northeast Region; MICHAEL CARVAJAL, in his official capacity as Director of the Federal Bureau of Prisons,<br><br>    Respondents-Defendants. | Case No. 3:22-cv-838 (JAM) |

## MOTION TO REOPEN CASE

Petitioner-Plaintiff Clare Bronfman ("Petitioner" or "Ms. Bronfman"), by and through her attorneys, The Law Office of Michael L. Chambers Jr., Ronald Sullivan Law PLLC, and Levin & Associates PLLC, as and for her Petition against Respondents-Defendants Timethea Pullen, in her official capacity as Warden of FCI Danbury; the Federal Bureau of Prisons; Bryan Antonelli, in his official capacity as Acting Regional Director of the Federal Bureau of Prisons' Northeast Region; and Michael Carvajal, in his official capacity as Director of the Federal Bureau of Prisons (collectively, "Respondents"), submits this motion asking that the Court reopen the above-captioned case and issue a writ of habeas corpus as initially requested.

**Commented [RS1]:** CB said a new warden started. Can you track that down?

### INTRODUCTORY STATEMENT

Just weeks ago, Ms. Bronfman and the Respondents submitted to this Court a Joint Stipulation of Dismissal, after the Bureau of Prisons ("BOP") decided to remove a false and defamatory sex offender label (Public Safety Factor or "PSF") from Ms. Bronfman's file and that

the habeas petition could therefore be dismissed without prejudice. Ms. Bronfman agreed to this stipulation and dismissal on the completely reasonable belief, shared by her counsel, that BOP had realized its error and would cease treating her like a sex offender. Sadly, BOP has not done so, and has, through its actions, repeatedly violated the spirit of the settlement of this habeas action. Though BOP did remove the sex offender label from her file, Ms. Bronfman continues to be treated as though she has been convicted of a sex offense: a case worker recently informed her that, because of her "offense status" as a sex offender, the warden would not grant her any CARES Act / FIRST STEP Act time credits. Further, on information and belief, Ms. Bronfman was told that her "offense status" as a sex offender is prohibiting her re-classification into a camp, where she would have been housed but for the erroneous sex offender PSF, which was the subject of the original filing in this matter.  The case worker also told her that the warden would not give her any credits because (on advice of counsel) she has declined to participate in a therapy program called the FIT Program, which would require her to falsely admit to sex offenses she did not commit.[1]

    Not only is BOP acting against the Joint Stipulation, but they are also <u>retaliating</u> against Ms. Bronfman for having brought her previous habeas petition. As described more fully below, just two days after the Joint Stipulation of Dismissal was filed, BOP began restricting Ms. Bronfman's access to counsel by cancelling Ms. Bronfman's longstanding standing telephone calls with her attorneys, and then by refusing to provide a heated space for counsel to meet with her. Merely days after that, BOP then announced to Ms. Bronfman and many of her friends and family members—*and one of her attorneys*—that she would not be allowed to contact them by

---

[1] During the pendency of drafting this motion, Ms. Bronfman was informed by FIT personnel that BOP had reversed course and that she would not be prejudiced by her decision to decline the FIT program. Ms. Bronfman has not received any correspondence from BOP confirming or refuting the veracity of this representation.

2

email, phone, mail, or in-person visits.

These actions violate the terms of the Joint Stipulation of Dismissal and Ms. Bronfman's constitutional rights under the First and Sixth Amendments. Ms. Bronfman moves to reopen the case and move forward with fact discovery on the myriad ways that BOP is acting contrary to the clear spirit of the dismissal and in violation of the First and Sixth Amendments to the Constitution. This is the essence of unwarranted "bad government" behavior.

**FACTS**

As the Government has all but conceded, BOP erroneously labeled Ms. Bronfman a sex offender in violation of her constitutional rights. Following argument, but before the Court had a chance to rule, BOP contacted Ms. Bronfman's attorneys and requested that a joint stipulation be filed agreeing that the false and defamatory sex offender label would be removed, paving the way for Ms. Bronfman to be housed in a lower-security setting as originally intended by the sentencing court and potentially making her eligible for early release under the FIRST STEP Act.

It was the very clear understanding of Ms. Bronfman and her counsel that once BOP agreed to remove the false and defamatory sex offender label (PSF) from her file, pursuant to the November 16 Joint Stipulation of Dismissal, that there would be no reason for her not to receive time credit for early release and she would be treated like other inmates without the sex offender PSF. Yet despite the Joint Stipulation, BOP continues to label Ms. Bronfman a sex offender pursuant to an "offense status" classification and treat her as such. For example, Ms. Bronfman was recently told by BOP representatives that they are now classifying her as "FSA-refusual" because she has not taken the FIT program. The Court may recall from earlier stages of this litigation that Ms. Bronfman was required to do FIT only because of the illegal PSF

3

classification. Counsel advised her not to take the program because it would require her to admit to "facts" regarding sexual abuse that were provably untrue and while her appeals and ancillary civil litigation are pending. More troublingly, a case manager recently personally informed Ms. Bronfman that "because of the offense conduct," (i.e., the alleged sex offenses) the warden would not sign off on her CARES / FIRST STEP Act time.

Beyond the mere refusal to abide by Joint Stipulation, BOP has also begun retaliating against Ms. Bronfman. A mere two days after the Joint Stipulation was filed, BOP abruptly and without explanation ended Ms. Bronfman's weekly legal calls, which had been occurring consistently for most of her time in BOP custody, almost two years, including during her placement in FCI Philadelphia. In a terse email to counsel, BOP stated, "I wanted to advise you that we will need to discontinue the weekly legal calls. If you want to do legal visits, then that is fine. However, we would not be doing both."  This is with full knowledge that lead counsel's principal office is in Washington, D.C. and other counsel are located in Chicago, New York, and Massachusetts. The effect is that counsel is now forced to travel hundreds of miles to have private conversations with Ms. Bronfman because of BOP's impermissible interference with Ms. Bronfman's Sixth Amendment right to counsel.

On November 21, 2022, just five days after the Joint Stipulation of Dismissal, BOP announced to Ms. Bronfman and many of her friends and family members that she would not be allowed to contact them via email, phone, or mail. The list of individuals that Ms. Bronfman can no longer communicate with is as notable for its length as for its complete randomness. It includes 28 individuals, including a family member, a former personal trainer, and a legal news organization.  It also—remarkably—includes one of her lawyers.

The legal news organization is the LISA Foundation, which publishes a weekly

4

newsletter that is sent to subscribers who are incarcerated in the federal prison system. One illustrative recent issue which Ms. Bronfman was prohibited from receiving discussed efforts in the legislature to change the mandatory minimum sentencing requirement disparity between powder and crack cocaine, press reports of various BOP-related litigation and issues, and recent grants of certiorari from the Supreme Court. There is no colorable argument that preventing Ms. Bronfman from reading this newsletter serves any legitimate penological interest.

One of the individuals prohibited from emailing Ms. Bronfman by BOP *is one of her attorneys*, Pamela Nichols, Esq., a partner in the Albany office of O'Connell & Aronowitz. Ms. Nichols is actively assisting in several legal issues affecting Ms. Bronfman, and she has put in an appeal to BOP to be reinstated.

There is no sensible relationship whatsoever amongst those individuals included on this list and no sensible explanation to be gleaned from comparing the individuals who are now prohibited from communicating with Ms. Bronfman and the individuals who remain on the approved contacts list. The only sensible explanation for this list is, once again, a clumsy and overreaching attempt by BOP to circumscribe Ms. Bronfman's rights, this time in retaliation for having taken them to Court in this case.

Once counsel was made aware of these retaliatory actions, they made plans to visit Ms. Bronfman. But BOP effectively denied lead counsel, Ronald S. Sullivan Jr., from even seeing Ms. Bronfman. Mr. Sullivan drove more than 150 miles one way for a scheduled legal visit. When he and co-counsel arrived, they were told that the meeting would be in the "prison library," which turned out to be a completely unheated room. At the time it was 33 degrees Fahrenheit, just north of literally freezing. Counsel were told they could not wear coats but could place their coats in a "locker." This suggestion frankly seemed designed to mock: the "lockers"

5

were only a few inches in height. Counsel pointed out that he could not safely hold a three-hour meeting in an unheated room without a coat. Counsel also pointed out that all the prison staff wore outer garments in recognition of the freezing temperature. Counsel requested that the prison accommodate counsel in light of the freezing temperatures by either permitting them to wear coats or providing a heated room. BOP declined.  The choice counsel was left with was no choice at all: either risk frost bite or drive 150 miles back home. This effectively denied Ms. Bronfman's Sixth Amendment right to counsel. To sit three hours in 33-degree weather does not represent a real choice at all. Instead, it was yet another instance of retaliation for Ms. Bronfman filing this action in the first place.

## ARGUMENT

**I.      The Court is Empowered to Reopen Cases Where Joint Stipulations of Dismissal Are Violated.**

"[A]ny order or other decision, however designated, that adjudicates fewer than all the claims . . . may be revised as any time before the entry of a judgment adjudicating all of the claims and all of the parties' right and liabilities." FRCP 54. The Joint Stipulation was a voluntary dismissal without prejudice under FRCP 41(a)(2). Voluntary dismissals without prejudice are not final, appealable orders. See *Rabbi Jacob Joseph School v. Province of Mendoza*, 425 F.3d 207 (2d Cir. 2005). Accordingly, the Court has the authority to reopen this case.

**II.     Continuing to Treat Ms. Bronfman as a Sex Offender Violates Her Due Process Rights.**

As made clear through previous filings and as discussed at oral argument, the PSF—***and the continuing practice of BOP to behave as if Ms. Bronfman has a PSF on her record, whether she does or not***—constitutes a violation of procedural due process. The only imaginable

6

remedy—necessitated by Due Process and motivated by equity—is to enjoin BOP to remove the PSF *and to act in accordance with that removal* by removing any sex offender "offense conduct" from Ms. Bronfman's record.

**III.     The Retaliatory Limitation on Ms. Bronfman's Contacts Violates Her First Amendment Freedom of Assembly Rights.**

The extent to which an incarcerated person's rights can be limited is circumscribed by the requirement that prison regulations be "reasonably related to a legitimate penological interest." *Turner v. Safley*, 482 U.S. 78, 89 (1974). "Whether an asserted regulation meets the 'reasonableness' test under *Turner* depends on a consideration of whether: (1) a 'valid, rational connection' exists between the regulation and the purported governmental interest; (2) alternative means of exercising a constitutional right remain available to a prisoner; (3) the accommodation of the right will have a significant impact on the prisoner's fellow inmates, prison staff or prison resources; and (4) ready alternatives to the regulation exist that would not impinge on the prisoner's rights." *United States v. Felipe*, 148 F.3d 101, 110 (2d Cir. 1998) (citing *Turner*, 482 U.S. at 89). While the *Turner* reasonableness test is generally used to test BOP regulations, it has also been used by the Second Circuit to test the reasonableness of conditions imposed on individual inmates, as it was in *Felipe*. *Id*.

Respondents fail on each of the *Turner* factors. There is no "valid, rational connection" between the regulation and the purported government interest—for indeed, there is no valid government interest here. Rather, Ms. Bronfman is, once again, being subjected to the irrational and arbitrary decisions of BOP bureaucrats who seek to punish her even more harshly than did the sentencing judge.

7

Ms. Bronfman has no alternative means of exercising the constitutional right to communicate with the outside world. For those individuals stricken from her permitted contacts list who had both telephonic and epistolary contact, they have been stricken from both. And, of course, there is a ready alternative available: to simply restore her permitted contacts list to its original state.

**IV.     The Retaliatory Limitation of Ms. Bronfman's Access to Counsel Violates Her Sixth Amendment Rights.**

There is perhaps no better evidence that BOP is illegally overreaching in their prohibition than the fact that one of the individuals Ms. Bronfman is no longer allowed to communicate with *is one of her attorneys*. This is a textbook violation of Ms. Bronfman's Sixth Amendment right to effective counsel.

Pamela Nichols has represented Ms. Bronfman on a variety of matters including giving her advice and drafting documentation during her sentencing. Only within the past few weeks did the Second Circuit hand down their decision in Ms. Bronfman's appeal. Ms. Bronfman obviously has a right and need to discuss the possibility of petitioning the Supreme Court for a writ of certiorari and other legal options to vindicate her interests with her attorneys.

Beyond the frankly shocking reality that BOP is attempting to prevent Ms. Bronfman from communicating with counsel, the fact that Ms. Nichols has been prohibited from communicating with Ms. Bronfman provides even further evidence that BOP is not making decisions "reasonably related to legitimate penological interests" as required by *Turner*. The completely arbitrary nature of the list makes clear that this is nothing more than an arbitrary and ham-fisted attempt by BOP to retaliate against Ms. Bronfman in violation of her constitutional rights.

Perhaps thinking that their retaliatory behavior so far had been too subtle, BOP then put counsel in the middle of a Kafkaesque farce, allowing Ms. Bronfman to meet with attorneys representing her in her criminal appeal only if they were willing to sit in a freezing room, only if they could first force their coats into lockers clearly too small for that purpose. Failing to provide counsel with any reasonable way of meeting with their client, BOP once again violated Ms. Bronfman's Sixth Amendment rights.

V.    **The Retaliatory Acts All Violate Ms. Bronfman's First Amendment Right to Petition.**

BOP's decision to severely limit Ms. Bronfman's ability to communicate with the outside world further violates Ms. Bronfman's Right to Petition. The Supreme Court's "precedents confirm that the Petition Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2010).

Ms. Bronfman exercised her right to petition by going through the complete and laborious appeals process during her previous habeas proceedings. There, despite clear evidence that BOP had either made a mistake or knew they were wrong, BOP continued to house Ms. Bronfman in higher-level security housing than was appropriate, going so far as to ignore the stated intentions and findings of fact of the trial judge, while falsely labelling her a sex offender.

The "random" change in who she is permitted to communicate with came very quickly after BOP was apparently forced to admit their error and agreed to remove the false sex offender label. There is no better explanation for why BOP has taken this action except as retaliation against Ms. Bronfman for exercising her Right to Petition. This is nothing more than a bald attempt to punish Ms. Bronfman for using her First Amendment rights by taking other First Amendment rights away.

**PRAYER FOR RELIEF**

**WHEREFORE**, Petitioner-Plaintiff Clare Bronfman respectfully requests the following relief:

(1) To reopen the case; and

(2) Pursuant to 28 U.S.C. § 2243, the issuance of a writ of habeas corpus directing Respondents to remove any references to sex offenses from Ms. Bronfman's record, to cease any requirement that she participate in the FIT program, to restore Ms. Bronfman's telephone and email list, to provide Ms. Bronfman and her attorneys with a space suitable for legal visits to allow Ms. Bronfman to both meet with and speak with her attorneys on the telephone, and to grant her time credit for early release absent any ability to show why she should not receive it, and all additional and further relief that this Court may deem just and proper.

Dated: January 19, 2023                    Respectfully submitted,

**LAW OFFICE OF MICHAEL L. CHAMBERS, JR.**

By:__/s_____
Michael L. Chambers (CT Bar No. 423287)
2 Congress St
Hartford, 06114
michael@mchamberslaw.com

**RONALD SULLIVAN LAW, PLLC\***
Ronald S. Sullivan Jr.
1300 I Street, N.W., Suite 400 E
Washington, D.C. 20005
Tel: (202) 313-8313
rsullivan@ronaldsullivanlaw.com

**LEVIN & ASSOCIATES, PLLC\***
Duncan Levin
44 Court Street, Suite 905
Brooklyn, New York 11201
Tel.: (212) 330-7626

10

dlevin@levinpllc.com

*Admitted *pro hac vice*

*Counsel for Petitioner-Plaintiff Clare Bronfman*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2023 the foregoing was electronically filed with the Clerk of the Court with the ECF system, which will send a notice of electronic filing to all counsel of record who have consented to electronic notification.

/s/ Ronald S. Sullivan Jr.<br>Counsel for Petitioner