UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLARE BRONFMAN, <br><br> Petitioner-Plaintiff, <br><br> v. <br><br> TIMETHEA PULLEN, in her official capacity as Warden of FCI Danbury; FEDERAL BUREAU OF PRISONS; BRYAN ANTONELLI, in his official capacity as Acting Regional Director of the Federal Bureau of Prisons' Northeast Region; MICHAEL CARVAJAL, in his official capacity as Director of the Federal Bureau of Prisons, <br><br> Respondents-Defendants. | Case No. 3:22-cv-838 (JAM) |

## REPLY TO BRIEF IN OPPOSITION TO MOTION TO REOPEN

In a move that is now all too familiar, BOP once again attempts to hide behind a dry and formalistic reading of legal procedure to avoid admitting that they have violated Ms. Bronfman's constitutional rights. The law does not require the Court to go along with them, and equity demands that it not.

**I.   The Court Can and Should Reopen This Case.**

As suggested by Defendants themselves, the Court certainly can treat the Petition to Reopen as an amendment to the original Petition for a Writ of Habeas Corpus. Since Ms. Bronfman has exhausted all administrative remedies that are actually available to her, such a petition would be successful.

**II.   Ms. Bronfman Has Exhausted Her Administrative Remedies.**

BOP argues that since the way in which they have retaliated against her is a new violation of her constitutional rights, that she should be forced to go through a yearlong administrative

appeals process again. That is an arid and unjust interpretation of what the law requires. BOP takes the various unconstitutional acts they have visited upon Ms. Bronfman as if they are wholly unrelated to one another. In fact, they are clearly related: the most recent acts complained of in the Motion to Reopen are efforts at retaliation toward Ms. Bronfman arising out of the original habeas proceedings, which began with a year of completely futile administrative proceedings. Consider the rationale for the requirement that administrative remedies be exhausted:

> "It gives prisoners an effective incentive to make full use of the prison grievance process, thus providing prisons with a fair opportunity to correct their own errors. It reduces the quantity of prisoner suits. And it improves the quality of those suits that are filed because proper exhaustion often results in creation of an administrative record helpful to the court." *Woodford v. Ngo*, 548 U.S. 81, 81-82 (2006).

The Court in *Woodford* found that the administrative remedy requirement had not been met. Here, though, it is undeniable that the same rationale cannot apply. The prison has had *more* than a fair opportunity to correct its errors. Instead of doing so, it has fought Ms. Bronfman at every turn, refusing to correct its patently false and defamatory labelling of Mr. Bronfman as a sex offender until it was clear that this Court may very well have forced them to do so. In response, the Government appears to have pulled a classic "bait and switch" move. They formally removed the "sex offender" label from her PSF, but replaced it with "offense conduct" that treats Ms. Bronfman as a sex offender. It is the rank elevation of form over substance and, respectfully, should not be tolerated by this Court. And to extract their pound of flesh the Government, then, retaliated against her. Reopening this case will accordingly do nothing to prevent BOP from correcting its own errors.

Similarly, denying the request to reopen will neither reduce the quantity or quality of the suits this Court will hear. If the Court rejects Ms. Bronfman's request, she will simply be forced to file a new habeas petition. It will extend the length of time this process takes for her, for the Court, for BOP—for everyone involved. And to what end? No one benefits *except BOP, who*

*have made it patently clear that they will drag their feet for as long as they can when it comes to providing Ms. Bronfman with her constitutionally guaranteed rights*.

If BOP's argument is correct—that every time they retaliate against an incarcerated person that a *new* round of administrative appeals is required—then virtually *no* instances of retaliation would ever be appropriately addressed because of the remarkable amount of time required to go through the administrative appeals process.

Let's be clear about what BOP is asking for here: the right to *continually* deprive inmates of their constitutional rights by carefully meting out their constitutional violations such that as soon as one violation makes it to court after a year of administrative appeals, *the functionally equivalent violation* cannot be adjudicated at the same time because a new appeals process must begin.

Dated: February 22, 2023    Respectfully submitted,

**LAW OFFICE OF MICHAEL L. CHAMBERS, JR.**

By:\_\_/s /_____
Michael L. Chambers (CT Bar No. 423287)
2 Congress St
Hartford, 06114
michael@mchamberslaw.com

**RONALD SULLIVAN LAW, PLLC\***
Ronald S. Sullivan Jr.
1300 I Street, N.W., Suite 400 E
Washington, D.C. 20005
Tel.: (202) 313-8313
rsullivan@ronaldsullivanlaw.com

**LEVIN & ASSOCIATES, PLLC\***
Duncan Levin
44 Court Street, Suite 905
Brooklyn, New York 11201
Tel.: (212) 330-7626

dlevin@levinpllc.com

*Admitted *pro hac vice*

*Counsel for Petitioner-Plaintiff Clare Bronfman*

## CERTIFICATE OF SERVICE

      I hereby certify that on February 22, 2023 the foregoing was electronically filed with the Clerk of the Court with the ECF system, which will send a notice of electronic filing to all counsel of record who have consented to electronic notification.

                                                                     /s/ Ronald S. Sullivan
                                                                     Counsel for Petitioner